**Ralph OYAGUE (96–A–0918), Petitioner,**

**v.**

**Christopher ARTUZ, Superintendent of Greenhaven Correctional Facility, Respondent.**

**Nos. 98–CV–6372 (JBW), 03–MISC–0066 (JBW).**

United States District Court, E.D. New York.

July 28, 2003.

---

Joyce C. London, New York, NY, Richard B. Lind, New York, NY, for Petitioner.

Glenn Green, James M. Catterson, Jr., Riverhead, NY, for Respondent.

## MEMORANDUM, JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

Petitioner is a state prisoner, convicted in New York and seeking habeas corpus relief from this federal court.

A hearing was held in this matter. Petitioner was present by telephone, with appointed counsel present in person. The petition for a writ of habeas corpus is denied for the reasons stated orally on the record. This memorandum briefly addresses petitioner's claims.

## I. Facts and Procedural History

In 1995 a bank on Long Island was robbed. According to a police report, petitioner, armed with a revolver, jumped behind a counter into the tellers' area of the bank, and began taking money out of tellers' drawers. Firing two shots in the direction of police officers responding to an emergency call, he and an accomplice fled the scene. One bullet hit an officer in the leg. Apparently having fainted and blacked out, petitioner was found near the scene.

A grand jury indicted, charging: four counts of first degree robbery, two counts of second degree robbery, and one count each of first degree attempted murder and second degree criminal possession of a weapon. Petitioner was offered a plea bargain. He accepted, pleading guilty to one count of first degree robbery and one count of first degree assault.

About six weeks later, prior to sentencing, petitioner moved to withdraw his plea. He contended that (1) there was no factual basis for his plea because he had no recollection of shooting a police officer; (2) he had insufficient time to consult with his attorney prior to pleading guilty; (3) his plea was induced by erroneous statements by the trial court and his own attorney concerning the amount of prison time he faced if he went to trial; and (4) he was not feeling well and was on medication at the time he pleaded guilty.

The trial court denied petitioner's motion to withdraw his plea. Sentence was consecutive terms of 10 to 20 years in prison for the robbery conviction and 5 to 15 years in prison for the assault conviction, for a total of 15 to 35 years in prison.

Although by his plea he had waived his right to appeal, petitioner nonetheless appealed to the Appellate Division, raising the same claims he had presented to the trial court in seeking to withdraw his plea. His conviction and sentence were affirmed. Leave to appeal to the New York Court of Appeals was denied.

Petitioner next moved to vacate his judgment of conviction, arguing, *inter alia*, that the trial court should have *sua sponte* ordered a competency examination. The motion was denied by the trial court. Leave to appeal to the Appellate Division was denied.

Petitioner then filed an application for a writ of error coram nobis before the Appellate Division, alleging that his appellate counsel was ineffective for failing to present claims based upon (1) the propriety of the guilty plea; (2) ineffective assistance of trial counsel; and (3) the failure to present federal constitutional claims to the state court for further review. The application was denied.

Petitioner filed a timely federal habeas application. Counsel was appointed to assist him. A motion for assignment of new counsel was granted. The habeas proceedings were stayed to allow petitioner to exhaust new claims identified by petitioner's new counsel.

Petitioner returned to state court and simultaneously filed another motion to vacate the judgment of conviction and another application for a writ of error coram nobis. The motion to vacate judgment was denied and leave to appeal to the Appellate Division was denied. The application for a writ of error coram nobis was denied.

A motion for reinstatement of petitioner's writ of habeas corpus was granted. Respondent brought a motion to dismiss the petition as untimely, which this court denied by prior memorandum and order.

In the instant application for a writ of habeas corpus, petitioner claims that (1) his plea was not voluntary, knowing and intelligent; (2) he received ineffective assistance of trial counsel based upon half a dozen lapses; (3) he received ineffective assistance of appellate counsel; (4) his federal due process rights were violated by the trial court's failure to hold an evidentiary hearing to determine his competence; and (5) his trial counsel labored under an actual conflict of interest that prejudiced petitioner.

## II. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir.2002). Determination of

factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. Exhaustion

In the past, a state prisoner's federal habeas petition had to be dismissed if the prisoner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "This exhaustion requirement is ... grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir.1982) (en banc).

Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3); *see also Ramos v. Keane*, No. 98 CIV. 1604, 2000 WL 12142, \*4, 2000 U.S. Dist. LEXIS 101, at \*10 (S.D.N.Y.2000) (state's failure to raise exhaustion requirement does not waive the issue).

## IV. Procedural Bar

A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

■ If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

When a state court "says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved." *Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir.1996). When a state court "uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama v. Comm'r of Corr. Svcs.*, 235 F.3d 804, 810 (2d Cir.2000). Where "a state court's ruling does not make clear whether a claim was rejected for procedural or substantive reasons and where the record does not otherwise preclude the possibility that the claim was denied on procedural grounds, AEDPA deference is

not given, because we cannot say that the state court's decision was on the merits." *Su v. Filion*, No. 02–2683, 335 F.3d 119, 126 n. 3 (2d Cir.2003) (citing *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir.2003)). This congeries of holdings leaves it an open question whether there are "situations in which, because of uncertainty as to what the state courts have held, no procedural bar exists and yet no AEDPA deference is required." *Id.*

## V. Ineffective Assistance of Counsel

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (emphasis added). The Supreme Court has explained that in giving meaning to this requirement we must be guided by its purpose—"to ensure a fair trial"—and that therefore the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a Sixth Amendment claim, a petitioner must prove both that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," *id.* at 688, 104 S.Ct. 2052, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. *See also Wiggins v. Smith*, 539 U.S. ——, 123 S.Ct. 2527, 2530–31, 156 L.Ed.2d 471 (2003); *United States v. Eyman*, 313 F.3d 741, 743 (2d Cir.2002). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

■ The performance and prejudice prongs of *Strickland* may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697, 104 S.Ct. 2052. In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the "cumulative weight of error" in order to determine whether the prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane*, 239 F.3d 191, 202 (2d Cir.2001). The court must also keep in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696, 104 S.Ct. 2052. "The result of a [criminal] proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Purdy v. Zeldes*, 337 F.3d 253, 260 (2d Cir.2003) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). Ineffective assistance may be demonstrated where counsel performs competently in some respects but not in others. *See Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir.2003).

■ As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91, 104 S.Ct. 2052. Counsel, in other

words, "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691, 104 S.Ct. 2052. Where counsel fails to make a reasonable investigation that is reasonably necessary to the defense, a court must conclude that the decision not to call an expert cannot have been based on strategic considerations and will thus be subject to review under *Strickland's* prejudice prong. *See Pavel v. Hollins,* 261 F.3d 210, 223 (2d Cir.2001) (counsel ineffective in a child sexual abuse case where his failure to call a medical expert was based on an insufficient investigation); *Lindstadt,* 239 F.3d at 201 (same). The court of appeals for the Second Circuit has recently gone so far as to imply that all of counsel's significant trial decisions must be justified by a sound strategy—a significant raising of the bar that would appear to require an unrealistic degree of perfection in counsel. *See Eze,* 321 F.3d 110, 135–36 (remanding to district court for factual hearing because it was "unable to assess with confidence whether strategic considerations accounted for ... counsel's decisions").

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

■ Each factual claim made in support of an allegation of ineffective assistance of counsel must be fairly presented to a state court before a federal habeas court may rule upon it. *See Rodriguez v. Hoke,* 928 F.2d 534, 538 (2d Cir.1991) (dismissing petition as unexhausted where petitioner's claim of ineffective assistance of counsel alleged more deficiencies before the habeas court than were presented to the state court, because "[t]he state courts should have been given the opportunity to consider all the circumstances and the cumula-tive effect of all the claims as a whole" (quotation omitted)). Where an additional factual claim in support of the ineffective-assistance allegation merely "supplements" the ineffectiveness claim and does not "fundamentally alter" it, dismissal is not required. *Caballero v. Keane,* 42 F.3d 738, 741 (2d Cir.1994). Each significant factual claim in support of an ineffective-assistance allegation premised on appellate counsel's deficient performance must be exhausted. *See Word v. Lord,* No. 00 CIV. 5510, 2002 WL 32145769, *11, 2002 U.S. Dist. LEXIS 19923, at *34–*35 (S.D.N.Y. Mar. 18, 2002) (Magistrate's Report and Recommendation).

Although the *Strickland* test was formulated in the context of an ineffective assistance of trial counsel claim, the same test is used with respect to claims of ineffective appellate counsel. *See Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir.1992). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, *see Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994). Either a federal or a state law claim that was improperly omitted from an appeal may form the basis for an ineffective assistance of appellate counsel claim, "so long as the failure to raise the state ... claim fell outside the wide range of professionally competent assistance." *Id.* (quotations omitted).

## VI. Certificate of Appealability

This opinion complies with *Miranda v. Bennett,* 322 F.3d 171, 175–77 (2d Cir. 2003), and Rule 52 of the Federal Rules of Civil Procedure. No other issue open to

consideration by this court has merit. *See Sumner v. Mata,* 449 U.S. 539, 548, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) ("a court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit").

■ A certificate of appealability may be granted with respect to any one of petitioner's claims only if petitioner can make a substantial showing of the denial of a constitutional right. **Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit.** *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). The court has taken into account the rule of section 2253(c)(3) of Title 28 of the United States Code that a certificate of appealability "shall indicate which specific issue or issues satisfy the [substantial showing of the denial of a constitutional right] required by paragraph (2)." *See also Shabazz v. Artuz,* 336 F.3d 154, 160 (2d Cir. 2003).

## VI. Analysis of Claims

■ Petitioner first claims that his plea was not voluntary, knowing and intelligent on four separate grounds. To be constitutionally valid, a plea must be entered into knowingly and voluntarily, with an understanding of its consequences:

> It is beyond dispute that a guilty plea must be both knowing and voluntary. The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. That is so because a guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination.

*Parke v. Raley,* 506 U.S. 20, 28–29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) (quotations and citations omitted).

Petitioner argues that the plea was induced by a trial court that engaged in a course of conduct that was coercive and threatening. He acknowledges that this particular claim was not raised on direct appeal but was raised in his motion to withdraw his plea, in a coram nobis application claiming ineffective assistance of appellate counsel, and in a motion to recuse the trial court. Given this concession, the claim is not exhausted. If now raised in the state courts it would presumably be barred on procedural grounds.

At any rate, this court has the statutory authority to address and deny the claim along with the rest of the petition. The claim is substantial but without sufficient merit on constitutional grounds. Sending it back to the state to exhaust would be futile since, in effect, the state court has rejected this claim whenever it was presented.

■ The contention relies largely on petitioner's recounting of an alleged off-the-record conversation with the trial court during which petitioner was told that if he went to trial and were convicted he would spend the rest of his life in prison because he would be facing a likely 65 years to life sentence. Assuming the conversation took place, there is no allegation that the trial court did not believe that its statements were accurate or that the court was motivated by anything but a desire to fully inform petitioner of the consequences of going to trial. Petitioner's claim that the trial court badgered him, threatened him, and expressed animus toward him is belied by the record. The trial court did not coerce petitioner's plea and habeas relief on this ground is not warranted. Difficulty with the case is partly caused by the continuing state practice of having off-the-

record discussions which a petitioner's imagination can treat in many ways without fear of documentary contradiction.

Petitioner next claims his plea was unknowing because he was misadvised by counsel that if he went to trial he faced the possibility of receiving consecutive sentences totaling a minimum of 65 years to life in prison. Whether or not this claim is couched in terms of a direct constitutional violation or in terms of ineffective assistance of counsel, petitioner must demonstrate that he was prejudiced by any faulty advise rendered to him. *See Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) ("In order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."); *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (entitlement to habeas relief requires showing that any constitutional error "had substantial and injurious effect or influence" on conviction and that the error resulted in "actual prejudice" (quotation marks omitted)); *see also United States v. Gordon,* 156 F.3d 376 (2d Cir.1998) (per curiam) (counsel's failure to be effective at the plea bargain stage could constitute ineffective assistance). Both iterations of this claim have been sufficiently exhausted and were denied by the state courts on the merits. Review thus proceeds under the standards of AEDPA. While petitioner depends largely upon his own recollection, for purposes of this discussion his assertions will be assumed to be true.

The contention is that his counsel's calculation—that he would be exposed to a potential minimum sentence of 65 years to life in prison—is incorrect because it assumes that he could legally have been convicted of two counts of first degree robbery when in fact conviction on two counts would have been a violation of New York State law and the Double Jeopardy Clause. He argues that the factual bases underlying the two robbery counts were actually part of the same transaction (i.e., the robbery of a bank) rather than two separate offenses as the prosecution claimed (i.e., robberies of two separate tellers and their money drawers). *See* N.Y.Crim. Pro. Law § 40.10(2) (" 'Criminal transaction' means conduct which establishes at least one offense, and which is comprised of two or more or a group of acts either (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture."); N.Y.Crim. Pro. Law § 40.20(2) ("A person may not be separately prosecuted for two offenses based upon the same act or criminal transaction unless," *inter alia,* "[e]ach offense involves death, injury, loss or other consequence to a different victim"). Petitioner also argues that the weapons charge would by statute have to have been dismissed as an inclusory concurrent count of the more serious crimes. According to petitioner's calculations, if he had gone to trial he would have faced a minimum range of approximately 33–1/3 years to life in prison and a maximum range of 50 years to life in prison.

Respondent contends that petitioner could properly have been convicted of two counts of robbery because he robbed two different tellers. The New York case law relied upon by respondent does not directly support that conclusion. For instance, respondent cites *People v. Rodgers,* 184 A.D. 461, 171 N.Y.S. 451 (App.Div. 1st Dept.1918), in which multiple convictions for robbery were deemed proper where the defendant entered a grocery store and took money both from the cash register

and from the pockets of an employee. It is not clear, particularly in light of section 40.10(2) of the New York Criminal Procedure Law, whether *Rodgers* should be viewed as authority for the proposition that petitioner in the instant case could actually have been convicted on both robbery charges, since petitioner seems to have been engaged in a single criminal incident carried out with a single criminal purpose or objective—that is, he was "robbing the bank" rather than "robbing bank teller Smith of the bank's money and then robbing bank teller Jones of more of the bank's money." Respondent reasonably suggests, however, that the victims of the robbery were in fact the bank tellers, who had a superior interest in the cash in their drawers. That suggestion is buttressed when it is acknowledged that it is the tellers who will likely suffer the future psychic costs of petitioner's actions.

Assuming that petitioner could not have been convicted of two counts of first degree robbery under the circumstances alleged in the indictment, the various calculations by defense counsel, the prosecutor and the trial court of the minimum prison exposure that petitioner faced was erroneous. If petitioner had gone to trial and been convicted on all counts for which he could legally have stood trial, his minimum potential exposure was 33–1/3 years to life in prison, rather than the minimum 65 years to life in prison that he was advised by counsel (and perhaps the trial court) that he faced.

The 32–year difference in the potential minimum sentence is huge. But is it sufficient under the circumstances for this court to conclude that but for the erroneous information provided by counsel (and perhaps the trial court), petitioner would not have pled guilty? The answer to that question is not obvious under the circumstance of the present case. Supporting

petitioner's view is the fact that, upon being provided with new counsel by his family, petitioner moved to withdraw his plea just six weeks after he entered it, and two weeks before he was scheduled to be sentenced.

Respondent counters by suggesting that petitioner, who was 43 years old at the time of sentence, would have accepted the plea offer of 15 to 35 years—the term for which he was actually sentenced—irrespective of whether he was properly advised that he might face a minimum prison term of 33–1/3 years to life in prison rather than 65 years to life in prison, because a 33–1/3 year sentence would in essence be a "life sentence." Some persons might take exception to the state's implication that a 76–year–old (petitioner's age if he were released after 33–1/3 years) is as good as dead.

The point is made more difficult because petitioner stated clearly, just a *short time* after pleading guilty and arguably learning that he had been misinformed, that he wished to withdraw his plea. There appears to have been no gamesmanship in petitioner's attempt to withdraw his plea. Prejudice under these circumstances is not clear. He will apparently now get out of prison at age 58 instead of, *potentially*, at age 76. Although that is a large difference that would have convinced many to accept the plea, it is a difference that was significantly less than what was arguably presented to him—i.e., potential release at age 58 instead of, at earliest if convicted of all charges, age 108.

■ This court considered seriously granting the writ. While the case is close, on balance the decision to deny seemed more consonant with current law. This is not a case of innocence. The Court takes judicial notice (though it does not rest on this ground) that the co-perpetrator, peti-

tioner's nephew, went to trial and was convicted.

█ Petitioner's remaining contentions in support of his claim that his plea was not knowing and voluntary are by themselves, or with other claims, unpersuasive. The Appellate Division addressed and rejected the claims that (1) petitioner's plea was improperly taken when he was under the influence of drugs, preventing him from understanding the proceedings, and (2) he failed sufficiently to allocute. The Appellate Division found:

> The defendant's assertions that his plea was not voluntary, knowing, and intelligent because he did not have adequate time to consult with counsel and because of his use of the drug Zoloft are belied by the record and are contrary to his express representations at the plea allocution (*see, People v. Melendez,* 135 A.D.2d 660, 522 N.Y.S.2d 235; *People v. Riley,* 120 A.D.2d 752, 503 N.Y.S.2d 71).

> The plea allocution was adequate as to the assault in the first degree count (*see, People v. McGowen,* 42 N.Y.2d 905, 397 N.Y.S.2d 993, 366 N.E.2d 1347). In any event, to the extent that any statements made by the defendant at the plea raised a question as to the intent element of that count, the plea was nonetheless properly accepted after it was established that the defendant entered into it knowingly, voluntarily, and intelligently, and with a full understanding of the consequences (*see, People v. Lopez,* 71 N.Y.2d 662, 529 N.Y.S.2d 465, 525 N.E.2d 5; *People v. Nixon,* 21 N.Y.2d 338, 287 N.Y.S.2d 659, 234 N.E.2d 687, *cert denied sub nom. Robinson v. New York,* 393 U.S. 1067, 89 S.Ct. 721, 21 L.Ed.2d 709; *People v. Serrano,* 15 N.Y.2d 304, 258 N.Y.S.2d 386, 206 N.E.2d 330; *People v. Walker,* 185 A.D.2d 951, 587 N.Y.S.2d 992).

*People v. Oyague,* 237 A.D.2d 311, 655 N.Y.S.2d 377, 377 (App.Div.2 Dept.1997). These factual and legal conclusions are reasonable.

Claims that petitioner received ineffective assistance of trial counsel and of appellate counsel are based upon half a dozen alleged lapses. Trial counsel's failure to properly advise him about his sentencing exposure has already been discussed. Petitioner urges that trial counsel was also ineffective for: failing to determine the factual basis for and strength of the claim that his statements had been coerced; failing to challenge the indictment as multiplicitous and in violation of the Double Jeopardy Clause; advising petitioner to plead guilty without first requiring a competency hearing; stipulating to serious injury of the wounded police officer without first seeing the medical records; failing to meet with his client and explain the consequences of the plea sufficiently prior to the plea; failing to request that conferences with he court be recorded; and failing to challenge the trial court's "threats and coercive behavior." Because a number of these claims were procedurally defaulted, petitioner has urged that appellate counsel was ineffective for failing to allege that trial counsel was deficient for the above reasons.

█ It is unnecessary to address each of these claims of ineffectiveness in detail; habeas relief is not warranted on the ground that trial counsel performed deficiently with respect to any of these claims, either singly or cumulatively. Although no trial was held, review of the record makes it clear that evidence of petitioner's guilt of the crimes of conviction was great. Counsel was not ineffective for urging petitioner to accept a plea offer even if prior to the trial he had not fully investigated every factual and legal circumstance relating to the case. None of the alleged deficiencies

(save for the possible misinformation given to petitioner concerning his potential sentence, discussed above) are sufficient to establish that petitioner was denied effective trial counsel under the standards of *Strickland*, because there is no reasonable probability (based on these assertions alone or together) that petitioner would not have pled guilty but for counsel's unprofessional performance.

Petitioner claims that his federal due process rights were violated by the trial court's failure to hold an evidentiary hearing to determine his competence. Contrary to respondent's contention, the claim appears to have been exhausted and was determined on the merits by the trial court in its denial of petitioner's first motion to vacate the judgment of conviction. Review therefore proceeds under the standards of AEDPA.

■ It is well-settled that the "criminal trial of an incompetent defendant violates due process." *Medina v. California*, 505 U.S. 437, 453, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992). This "prohibition is fundamental to an adversary system of justice." *Drope v. Missouri*, 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). In determining whether a criminal defendant is competent to stand trial, the trial court must consider "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). The duty to protect a defendant from being tried while incompetent persists throughout trial, so "even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of

competence to stand trial." *Drope*, 420 U.S. at 181, 95 S.Ct. 896.

■ At one point during the hearing in the instant case at which he pled guilty and allocuted to the crime, petitioner said, "I am not well.... I just had a dizzy spell." Nov. 13, 1995 Tr. at 45. Petitioner also informed the trial court, in response to a query, that he had taken Zoloft, an antidepressant medication, prior to the hearing. Petitioner now claims that the court should have sua sponte held a hearing to determine whether petitioner was competent under these circumstances to enter a plea of guilty. The contention is without merit. Review of the hearing transcript reveals lengthy exchanges, largely in question-and-answer form, between the trial court and petitioner. Petitioner responded appropriately to all questions and clearly understood the nature of the proceedings. The trial court was not compelled under these circumstances to further examine—whether through an established state procedure or otherwise—petitioner's competence to proceed. There was no due process violation. Habeas relief on this ground is not warranted.

Petitioner finally claims that his trial counsel labored under an actual conflict of interest that prejudiced petitioner. The claim appears to be barred from review in this court because it was deemed procedurally defaulted by the trial court after being raised in a motion to vacate judgment. Whether defaulted or not, the claim is meritless even under a de novo standard of review.

■ The Court of Appeals for the Second Circuit has explained that while a defendant is required to demonstrate prejudice to prevail on most claims of ineffective assistance of counsel, prejudice is presumed where a defendant's counsel is burdened by an actual conflict of interest.

*United States v. Feyrer,* 333 F.3d 110, 115–16 (2d Cir.2003). Nonetheless,

[t]his presumption is not conclusive. In order for a defendant to prevail on a claim that he was denied effective assistance of counsel based on counsel's actual conflict, the defendant must still establish that (a) counsel actively represented conflicting interests, and (b) such conflict adversely affected his lawyer's performance. *Id.; see also Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (discussing standard for obtaining relief from conviction based on an actual conflict); *accord Schwarz,* 283 F.3d at 91.

We have held previously that "an attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *Id.* at 91. An actual conflict of interest does not present grounds for a new trial if it does not rise to more than "a mere theoretical division of loyalties." *See Mickens v. Taylor,* 535 U.S. 162, 171, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). To obtain a new trial, a defendant must prove that the conflict manifested itself as "an actual lapse in representation." *See Cuyler,* 446 U.S. at 349, 100 S.Ct. 1708. To prove the lapse in representation "a defendant must demonstrate that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Schwarz,* 283 F.3d at 92; *see also Winkler v. Keane,* 7 F.3d 304, 309 (2d Cir.1993). With respect to the substance of the plausible alternative strategy, the defendant need not show that the defense would necessarily have been successful had it been used, only that "it possessed sufficient substance to be a viable alternative." *Winkler,* 7 F.3d at 309.

*Feyrer,* 333 F.3d at 115–17 (parallel citations omitted).

 Petitioner in the instant case alleges that counsel worked under an actual conflict because, at the same time he was representing petitioner, he was running a political campaign for election as Assemblyman in Nassau County on a "Tough on Crime" platform. A campaign brochure reflects his apparent support for "Stiffer penalties for crimes committed with a gun." Supp. Mem. of Law in Support of Renewed Pet'n for Writ of Habeas Corpus, App., Ex. 8 at 2. Petitioner suggests that counsel's campaign position is inherently at odds with the obligation of defense counsel to zealously represent his client. Petitioner also suggests that counsel's former employment as a police officer suggests that his sympathies lie with the police department. These claims are unfounded. Counsel was under no obligation to accept petitioner as a client; that he chose to do so suggests that he was unconcerned with the political fall-out from his representation of petitioner and that he felt respect for the police and concern for the rights of petitioner were reconcilable; former police officers are often preferred by defendants as counsel in criminal cases because they "know the ropes" and "have connections" to get information. There was no actual conflict.

 Petitioner also suggests that counsel was laboring under a conflict because petitioner compensated counsel through a barter arrangement—with petitioner paying for legal representation by providing landscaping services. Petitioner suggests that his incarceration would render counsel's efforts *pro bono* by necessity. It is unclear precisely how a conflict is mani-

fested under such circumstances. Payment by goods or services rather than by cash does not violate any ethical rule that this court is aware of. It may be that petitioner was unable to pay his lawyer's fee, but similar situations occur in courts across the nation daily. It is likely that Abraham Lincoln received remuneration through farmers' products. Attorneys today frequently take their fees in stock. There was no conflict of interest, and habeas relief on this ground is not warranted.

VII. Conclusion

The petition for a writ of habeas corpus is denied.

A certificate of appealability is granted with respect to petitioner's claim that he was denied effective assistance of trial counsel due to counsel's and the court's failure to properly advise him of the minimum sentencing exposure he faced if he went to trial, and with respect to the closely related and intertwined voluntariness of the pleas, which for this purpose is exhausted. No certificate of appealability is granted with respect to any of petitioner's remaining claims, no substantial showing of the denial of a constitutional right having been shown.

SO ORDERED.