Kevin DUREN (95–A–2363), Petitioner,

v.

**Floyd BENNETT, Superintendent of Elmira Correctional Facility, Respondent.**

Nos. 98–CV–2094(JBW), 03–MISC–0066(JBW).

United States District Court, E.D. New York.

July 31, 2003.

Kevin Duren, Clinton Corr. Fac., Dannemora, NY, pro se.

Diane R. Eisner, Kings County District Attorney's of Renaissance Plaza, Brooklyn, NY, for Respondent.

### JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

A hearing was held in this matter. Petitioner was present by telephone. The petition for a writ of habeas corpus is denied. This memorandum briefly addresses petitioner's claims.

### I.   Facts and Procedural History

Petitioner was tried for various counts, including First Degree Robbery and Second Degree Murder, arising out of a stabbing that occurred in the lobby of his apartment building. There was testimony at trial that petitioner and a number of his friends were in the lobby when an unknown man put a gun to the side of one of the party, Rodney Greene, and robbed him. Greene and some of the others left the apartment building to discuss what had just happened. While they were outside another man, Vance Crawford, who was not known to any of the group, entered the building and went into the lobby. When Greene re-entered the building he found petitioner and Crawford struggling in the lobby.

Petitioner wrestled Crawford to the floor pinning him on his back. Petitioner started kicking Crawford in the face and shoulders. At that point another member of the original group, Richard Esperson, joined defendant in kicking Crawford in the face. Esperson then went through Crawford's pockets and pulled out some cash and a brown-handled knife. Petitioner was also observed taking a ring off of Crawford's hand.

Esperson backed off from the struggle. Petitioner continued to kick Crawford, who said "You got what you want, leave me alone." Greene, who had been watching the struggle, heard petitioner ask Esperson to give him the knife. Esperson handed the knife to petitioner, who opened it and brandished it over Crawford. Crawford waved his hands back and forth in front of his face to defend himself. Again he asked petitioner to leave him alone. Both Greene and another member of the original group, who was standing outside, heard Crawford plead, "Don't do it, don't do it." Petitioner then stabbed Crawford six or seven times in the chest, killing him.

Petitioner and Esperson then ran up the stairs. Greene followed them, eventually to Esperson's apartment, where petitioner said to him, "I know what I did is wrong and I know I can get 25 years to life for this, but you can't tell what I did cause I can't do 25 years in jail." Petitioner and Greene then left Esperson's apartment and went down in the elevator to the lobby. In the elevator petitioner told Green, "When you go down there, just be easy, just be cool." Police officers were called to the scene. Several days later Esperson was interviewed by detectives. The knife was found underneath a parked car in a lot alongside a nearby community center. After speaking with Esperson, the police officers picked up petitioner and placed him in a line-up. Petitioner was identified by Greene as the man who had committed the stabbing.

In his defense, petitioner testified that Greene had been selling drugs from the lobby that evening, as he had on previous occasions. Petitioner testified that after Greene was robbed he, petitioner, was inside the lobby when Crawford knocked on the lobby door. Petitioner let him in and moved into a corner of the lobby. Petitioner testified that Crawford then approached him in a hostile manner and asked petitioner if he had drugs on him. When petitioner explained that he did not have any drugs, Crawford asked who had them. Petitioner then said, "Mother-fucker, I just told you I ain't got no drugs, man." Crawford responded, "Yo, first of all, shorty, watch the way you talk to me." Crawford then pulled out a folding knife. Petitioner testified that he thought Crawford was going to try to kill him. Crawford attempted to open the knife, but was unsuccessful. Petitioner states that he felt that he had nowhere to run, and therefore began to wrestle with Crawford. When Greene entered the lobby petitioner thought he would help him, but Greene did not.

At that point Esperson came out of the area of the steps in the back of the lobby, and petitioner told him to get the knife from Crawford. Esperson was able to grab the knife from Crawford. Petitioner stated that he and Esperson continued to struggle but soon broke apart from each other. Esperson handed petitioner the knife. Petitioner claims that although he had taken up a defensive stance and had opened the knife, Crawford kept advancing on him. Petitioner states that he had no intention of harming Crawford, and that he only wanted to back him up by making a lot of "furious motions" with the knife in his hand as Crawford advanced towards him, his hands raised in a fighting position. He stated that he was petrified that the knife would be taken from him and that he might be killed, and that he does not recall stabbing Crawford with the knife. Petitioner also testified that he did not run to the lobby staircase to try to escape from Crawford because he felt that if he had, Crawford might catch him from behind. He denied robbing Crawford.

Petitioner was charged with Second Degree Murder (intentional murder); Second Degree Murder (felony murder); First Degree Manslaughter; Second Degree Manslaughter; First Degree Robbery; and Second Degree Robbery. In its instructions, the trial court told the jurors to first consider the felony murder charge and next to consider the intentional murder charge. Only if it found petitioner not guilty of the intentional murder charge was the jury to proceed to consider the first degree manslaughter charge. The jury was further told that it was to consider the second degree manslaughter charge only if it found petitioner not guilty of the first degree manslaughter charge. In court the clerk asked the jury what its verdict in the murder counts was, and the foreperson announced that the jury found petitioner not guilty of felony murder but

guilty of intentional murder. The clerk then asked for the robbery verdicts. The foreperson reported that the jury had found petitioner guilty of first degree robbery but not guilty of second degree robbery. The verdict sheet was not inconsistent with the verdicts announced in open court, but the jury had marked petitioner not guilty of murder in the second degree (felony murder) and not guilty of manslaughter in the first degree—which, if the jury had followed the trial court instructions, they should not have reached at all.

Petitioner was sentenced to 25 years to life in prison. His convictions and sentence were affirmed by the Appellate Division. Leave to appeal to the New York Court of Appeals was denied. No collateral motions in state court were filed.

In the present application for a writ of habeas corpus, petitioner claims (1) that he was denied due process of law because his conviction for intentional murder was repugnant with the jury's finding of not guilty on intentional manslaughter; (2) that the court's justification charge, in which it charged the jury that appellant had a duty to retreat before defending himself, even though the encounter occurred in his own dwelling, deprived him of due process of law; and (3) that because the jury's acquittal of second degree robbery meant that the jury discredited the evidence of a forcible taking and because the acquittal of felony murder meant that the serious physical injury did not occur until the robbery was completed, petitioner's conviction of first degree robbery was against the weight of the evidence. Each of these claims was raised by petitioner on direct appeal and was presented to the New York Court of Appeals. Therefore, all claims are exhausted.

## II. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman,* 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle,* 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton,* 295 F.3d 270, 278 (2d Cir.2002). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear

and convincing evidence." 28 U.S.C. § 2254(e)(1).

This opinion complies with *Miranda v. Bennett,* 322 F.3d 171, 175–77 (2d Cir. 2003), and Rule 52 of the Federal Rules of Civil Procedure. No other issue open to consideration by this court has merit.

### III. Exhaustion

In the past, a state prisoner's federal habeas petition had to be dismissed if the prisoner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "This exhaustion requirement is . . . grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982) (en banc).

Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3); *see also Ramos v. Keane,* No. 98 CIV. 1604, 2000 WL 12142, at *2, 2000 U.S. Dist. LEXIS 101, at *10 (S.D.N.Y.2000)

(state's failure to raise exhaustion requirement does not waive the issue).

If a petitioner specifies only certain issues that he deems worthy of review in a letter seeking leave to appeal a conviction to the New York Court of Appeals, he will be deemed to have waived any remaining claims in the original appellate brief. *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir. 1991).

A claim may be presented for habeas review even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his claim before the state court, relied on pertinent federal cases employing constitutional analysis, relied on state cases employing constitutional analysis in like fact situations, asserted his claims in terms so particular as to call to mind specific rights protected by the constitution, or alleged a pattern of facts well within mainstream of constitutional litigation. *See Daye v. Attorney General,* 696 F.2d 186 (2d Cir.1982).

### IV. Procedural Bar

A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546.

If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear

reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

When a state court "uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama v. Comm'r of Corr. Svcs.*, 235 F.3d 804, 810 (2d Cir.2000). When a state court "says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved." *Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir.1996).

"[A] habeas petitioner may also bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, *i.e.*, that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 729 (2d Cir.2002).

## V. Certificate of Appealability

This opinion complies with *Miranda v. Bennett*, 322 F.3d 171, 175–77 (2d Cir. 2003), and Rule 52 of the Federal Rules of Civil Procedure. No other issue open to consideration by this court has merit. *See Sumner v. Mata*, 449 U.S. 539, 548, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) ("a court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit").

A certificate of appealability may be granted with respect to any one of petitioner's claims only if petitioner can make a substantial showing of the denial of a constitutional right. Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Any claims for which a certificate of appealability is granted will be reviewed *de novo* by the Court of Appeals.

## VI. Instant Claims

As an initial matter, respondent contends that all of petitioner's claims are procedurally barred and may not be reached by this court. Respondent premises the argument on the fact that petitioner's letter to the New York Court of Appeals seeking leave to appeal did not specifically identify the issues on which the application was based. The Court of Appeals, however, did not state that it relied on a procedural bar in refusing leave to appeal. Petitioner's letter to the Court of Appeals and its denial of leave to appeal was sufficient to exhaust petitioner's state remedies and there is no indication that his claims were denied on procedural grounds. Absent some other procedural bar, the merits of petitioner's claims may therefore be addressed by this court under the review standards set forth by AEDPA.

Petitioner first claims that he was denied due process of law because his conviction for intentional murder was repugnant with the jury's finding that he was not guilty of intentional manslaughter. The alleged repugnancy is evidenced only on the verdict sheet, on which the jury appears to have failed to follow the trial court's instructions by checking "not guilty" next to the manslaughter count after having checked "guilty" on the intentional murder count. In open court, the clerk did not inquire of the jury concerning the manslaughter count after the jury foreman announced a guilty verdict for the intentional murder charge.

In *People v. Tucker*, the New York Court of Appeals set forth the New York rule concerning repugnant jury verdicts:

When there is a claim that repugnant jury verdicts have been rendered in re-

sponse to a multiple-count indictment, a verdict as to a particular count shall be set aside only when it is inherently inconsistent when viewed in light of the elements of each crime as charged to the jury....

The critical concern is that an individual not be convicted for a crime on which the jury has actually found that the defendant did not commit an essential element, whether it be one element or all. Allowing such a verdict to stand is not merely inconsistent with justice, but is repugnant to it....

The instructions to the jury will be examined only to determine whether the jury, as instructed, must have reached an inherently self-contradictory verdict. 55 N.Y.2d 1, 447 N.Y.S.2d 132, 431 N.E.2d 617, 617–20 (1981); *see also People v. Trappier*, 87 N.Y.2d 55, 637 N.Y.S.2d 352, 660 N.E.2d 1131 (1995) ("A verdict is inconsistent or repugnant ... where the defendant is convicted of an offense containing an essential element that the jury has found the defendant did not commit. In order to determine whether the jury reached 'an inherently self-contradictory verdict' a court must examine the essential elements of each count as charged."). Under New York law, New York courts could conclude a jury's announcement in court of guilty or not guilty, rather than its markings on a verdict sheet, constitute the verdict of the jury. *See People v. Khalek*, 91 N.Y.2d 838, 666 N.Y.S.2d 1020, 689 N.E.2d 914, 915 (1997) ("Because the jury's unreported verdict was not announced in court, recorded in the minutes, or accepted by the court, it does not constitute a final verdict for double jeopardy purposes.").

■ Petitioner's claim, although not procedurally barred by the New York Court of Appeals (as respondent urges), *was* clearly and unequivocally deemed procedurally barred by the Appellate Division, which found the claim unpreserved for appellate review. *See People v. Duren*, 234 A.D.2d 560, 652 N.Y.S.2d 297 (1996). Petitioner did not register a protest concerning this issue at a time when any error might have been rectified, prior to the jury being dismissed. Petitioner urges that there is nothing in the record to indicate that defense counsel was allowed to see the verdict sheet when the verdict was being taken, and that therefore petitioner was unaware that the jury had actually "acquitted" him of intentional manslaughter. Petitioner, however, has never presented, either in a state court or to this court, an affidavit from trial counsel asserting that he did not in fact see the verdict form. At any rate, it was the duty of defense counsel to seek disclosure of the verdict sheet. *See People v. McBride*, 203 A.D.2d 86, 87, 610 N.Y.S.2d 481 (1994).

The Appellate Division's conclusion that petitioner's claim was unpreserved for appellate review is, under all the circumstances, a reasonable conclusion and sets forth an adequate ground for a finding of procedural default. This court therefore may not reach the merits of petitioner's claims. It would, moreover, be particularly inappropriate for this court to reach the merits of a claim that, had it been raised in a timely manner at trial, would have been adequately addressed by the trial court through a brief inquiry of the jurors.

Once the jurors found petitioner guilty of intentional murder—which they were directed to address before turning to the manslaughter charges—their notation of "not guilty" for intentional manslaughter was a superfluous mark added for the sake of completeness. When queried in open court, the jurors all stated that they had found petitioner guilty of intentional murder. It beggars belief that the jury in fact found that the state had not proven all elements of the manslaughter crime (as evidenced by their supposed acquittal of

petitioner of intentional manslaughter) and yet still averred that the prosecution had proven those same elements, plus intent to kill, beyond a reasonable doubt with respect to intentional murder. It was the responsibility of petitioner's counsel to request the verdict sheet and draw any inconsistency to the attention of the trial court. Under these circumstances, failure of counsel to raise the problem does not show lack of adequacy.

At any rate, "[t]he law is clear that a defendant may not attack his conviction on one count because it is inconsistent with an acquittal on another count." *United States v. Romano*, 879 F.2d 1056, 1060 (2d Cir.1989), *citing United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). Review for sufficiency of the evidence is a sufficient safeguard against jury irrationality. *Powell*, 469 U.S. at 67, 105 S.Ct. 471. No habeas relief is warranted on this procedurally defaulted claim.

■ Petitioner next claims that the court's justification charge, in which it charged the jury that petitioner had a duty to retreat before defending himself even though the encounter occurred in his dwelling, deprived him of due process. "In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir.1985). In weighing the prejudice from an allegedly improper charge, a reviewing court must view the instruction in its total context. *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). The question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147, 94 S.Ct. 396.

Under section 35.15 of New York Penal Law, a person "may not use deadly physical force upon another person ... unless: He reasonably believes that such other person is using or is about to use deadly physical force. Even in such case, however, the actor may not use deadly physical force if he knows that he can with complete safety to himself and others avoid the necessity of doing so by retreating; except that he is under no duty to retreat if he is in his dwelling and not the initial aggressor." The trial court refused to instruct the jury that petitioner had no duty to retreat.

■ The Appellate Division, in rejecting petitioner's claim that this failure to instruct was erroneous, stated, "Inasmuch as the crime took place in the lobby of the defendant's apartment building and not 'in his dwelling,' the court properly refused to charge, as part of the law of justification, that the defendant did not have a duty to retreat." *People v. Duren*, 234 A.D.2d 560, 652 N.Y.S.2d 297 (1996). The Appellate Division's interpretation of this New York criminal statute is reasonable and presents no issue suitable for review by this federal court. The trial court did not misstate state law, and the instruction to the jury did not violate any right guaranteed him by federal law. No fundamental miscarriage of justice has occurred as a result of this instruction. Habeas relief is not warranted on this ground.

Petitioner finally claims that, because the jury's acquittal of second degree robbery meant that the jury discredited the evidence of a forcible taking and that the acquittal of felony murder meant that the serious physical injury did not occur until after the robbery was completed, his conviction for first degree robbery was against the weight of the evidence. Contrary to respondent's assertion, this claim was exhausted and was not procedurally

defaulted in state court. The relevant question for this court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler v. Supreme Court,* 109 F.3d 836, 840 (2d Cir.1997).

 Habeas relief is not merited on this claim. Petitioner asserts that there was no evidence presented at trial that he had committed a robbery without the aid of an accomplice, and that by acquitting him of second degree robbery (*i.e.,* robbery aided by another person) the jury necessarily found that no robbery had taken place. The claim has no merit. There was sufficient evidence presented at trial for a rational trier of fact to have found each of the elements of the crime beyond a reasonable doubt: Several eyewitness testified that petitioner and Esperson assaulted and caused serious physical injury to the victim (stabbing him to death), and that petitioner forcibly stole property (the victim's ring). There was also evidence that Esperson removed a knife and money from the victim's pocket. The conviction for first degree robbery was not against the weight of the evidence.

Petitioner's acquittal of second degree robbery does not negate this conclusion. As New York courts have repeatedly held, even seemingly illogical verdicts should not be disturbed where the jury was likely exercising mercy and there was sufficient evidence to support the charge of which a defendant was convicted. *See Tucker,* 447 N.Y.S.2d at 134, 431 N.E.2d at 619 ("The problems of second-guessing are compounded by the possibility that the jury has not necessarily acted irrationally, but instead has exercised mercy. When the jury has decided to show lenity to the defendant, an accepted power of the jury, the court should not then undermine the jury's role and participation by setting aside the verdict." (citations omitted)); *People v. Whitmore,* 123 A.D.2d 336, 506 N.Y.S.2d 231, 233 (1986). Habeas relief is not warranted on this ground.

VII. Conclusion

The petition for a writ of habeas corpus is denied.

No certificate of appealability is granted with respect to any of petitioner's claims, petitioner having made no substantial showing of the denial of a constitutional right.

Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

SO ORDERED.