Miguel MIRANDA, Petitioner–
Appellant,

v.

Floyd BENNETT, Respondent–
Appellee.

Docket No. 99–2718.

United States Court of Appeals,
Second Circuit.

Argued: June 7, 2001.

Decided: Feb. 26, 2003.

Larry W. Yackle, Boston University School of Law, Boston, Massachusetts (Perry S. Reich, Schapiro & Reich, Lindenhurst, New York, NY, on the brief), for Petitioner–Appellant.

Amy Appelbaum, Assistant District Attorney, Kings County, Brooklyn, New York (Charles J. Hynes, District Attorney for Kings County, Leonard Joblove, Victor Barall, Assistant District Attorneys, Brooklyn, New York, Richard A. Brown, District Attorney for Queens County, John M. Castellano, Assistant District Attorney, Kew Gardens, New York, Eliot Spitzer, Attorney General for the State of New York, Valerie Singleton, Assistant Attorney General, New York, New York, on the brief), for Respondent–Appellee.

Before: KEARSE, STRAUB, and SACK, Circuit Judges.

KEARSE, Circuit Judge.

Petitioner Miguel Miranda, a New York State ("State") prisoner, seeks a certificate of appealability pursuant to 28 U.S.C. § 2253(c) to permit review of a judgment entered in the United States District Court for the Eastern District of New York which denied his petition under 28

U.S.C. § 2254 for a writ of habeas corpus vacating his conviction on the grounds, *inter alia,* that he was denied a fair trial because of prosecutorial misconduct, that he was denied the right to represent himself at trial, and that he received ineffective assistance from his trial attorney, all in violation of his rights under the Sixth and Fourteenth Amendments to the Constitution. The district court denied the petition, adopting the reasons given by the State's Appellate Division in affirming Miranda's conviction and the reasons given by the State in opposing the petition. For the reasons that follow, we remand to the district court for a specification of the ground or grounds on which the claims of prosecutorial misconduct and denial of self-representation were rejected; as to all other claims, we deny a certificate of appealability.

## I. BACKGROUND

Miranda was convicted on several robbery counts following a jury trial in State Supreme Court. He appealed his conviction to the Appellate Division of the Supreme Court complaining, *inter alia,* that the trial court denied his motion to dismiss his assigned counsel and appoint a new attorney to represent him, that his assigned counsel rendered ineffective assistance at trial, that misconduct by the prosecutor deprived him of a fair trial, and that he was improperly sentenced. The Appellate Division affirmed, stating as follows:

> The trial court conducted a sufficient inquiry regarding the defendant's request that his assigned counsel be relieved and properly denied his application to appoint a new counsel since he failed to demonstrate good cause for the substitution (*see, People v. Sides,* 75 N.Y.2d 822, 824–825, 552 N.Y.S.2d 555, 551 N.E.2d 1233; *People v. Outlaw,* 184 A.D.2d 665, 584 N.Y.S.2d 870; *People v.*

> *Gloster,* 175 A.D.2d 258, 260, 572 N.Y.S.2d 370). Furthermore, a review of the record reveals that the defendant received effective assistance of counsel (*see, People v. Baldi,* 54 N.Y.2d 137, 146–148, 444 N.Y.S.2d 893, 429 N.E.2d 400).

> Contrary to the defendant's contention, the court complied with the mandates of Penal Law § 70.10(2) and adequately set forth on the record its reasons for sentencing the defendant as a persistent felony offender (*cf., People v. Gaines,* 136 A.D.2d 731, 524 N.Y.S.2d 70).

> The defendant's remaining contentions are unpreserved for appellate review, without merit, or do not require reversal.

*People v. Miranda,* 243 A.D.2d 584, 584–85, 665 N.Y.S.2d 507, 508 (2d Dep't), *lv. denied,* 91 N.Y.2d 877, 668 N.Y.S.2d 575, 691 N.E.2d 647 (1997).

Miranda filed his present petition for habeas corpus in the district court, asserting that his rights were violated by the prosecutor's misconduct, by the trial court's denial of his motion to dismiss his trial counsel and appoint a new attorney, by his trial counsel's ineffective assistance, and by the sentence imposed on him under state-law provisions for persistent felony offenders. He also claimed that the trial court improperly denied his motion to proceed at trial *pro se;* his petition attached copies of pages from the brief that had been submitted to the Appellate Division by his attorney, which stated that "defendant requested to represent himself."

The State opposed the petition, arguing that Miranda's claims were procedurally barred, lacked merit, had been waived, did not raise federal claims, or involved only nonprejudicial error. Some parts of the State's arguments may have created, rather than answered, relevant factual ques-

tions. For example, as to the claim that Miranda had been denied a fair trial by the prosecutor's questions on cross-examination, the State argued that "[t]he Appellate Division held that [that] claim was unpreserved for review" (*see* State's Memorandum of Law in Opposition to [Miranda's] Application for a Writ of Habeas Corpus dated March 8, 1999 ("State's Memorandum"), at 8), despite the fact that the Appellate Division had not mentioned that claim except to the extent that it must have been one of the "remaining contentions" that the court stated were "unpreserved for appellate review, without merit, *or* d[id] not require reversal," *People v. Miranda*, 243 A.D.2d at 585, 665 N.Y.S.2d at 508 (emphasis added). In addition, the State's Memorandum argued that Miranda's claim of unfair cross-examination was procedurally barred because Miranda did not object at trial to the prosecutor's cross-examination (State's Memorandum at 7–8); but it also argued that Miranda could not meet the cause-and-prejudice test for his failure to object, and that the claim was without merit, because the trial court had taken curative steps "[a]fter petitioner's counsel objected to this line of questioning" (*id.* at 10–11).

With respect to the claim that Miranda had been denied the right to represent himself at trial, the State argued, *inter alia,* that "this claim is not supported by any evidence and must be discounted." (*Id.* at 12.) After describing Miranda's request for the replacement of his assigned counsel with new counsel, and describing an out-of-court incident in which Miranda allegedly threatened witnesses against him, leading the trial judge to order him separated from other inmates and from his codefendants during transport to and from prison because of his "very serious anger and hostility" (*id.* at 14 (internal quotation marks omitted)), the State said that "[i]t is apparent from the above that petitioner did not request to proceed *pro se* at any time, including before his trial began, and thus was not entitled to defend himself." (*Id.*) The State added that

> [h]ad petitioner exercised his absolute right to proceed *pro se* before trial, it likely would have been revoked.... [I]t is well settled that the right to self-representation, although asserted before trial, can be constructively waived due to disruptive behavior during trial[ ] .... Had petitioner moved to proceed *pro se* after his trial began, it is doubtful that he would have been successful because of his "anger and hostility."

(*Id.* n. 2.)

In an order dated July 27, 1999, the district court rejected Miranda's claims, stating, in pertinent part, that the

> petition for a writ of habeas corpus is denied substantially for the reasons set out in the decision of the Appellate Division, *People v. Miranda*, 243 A.D.2d 584, 665 N.Y.S.2d 507 (2d Dep't 1997), and the respondent's Memorandum of Law dated March 8, 1999, submitted in opposition to the petition.
>
> In addition, petitioner's claims do not meet the standards required by 28 U.S.C. § 2254(d) for grant of the petition. None of the state's rulings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.

District Court Order dated July 27, 1999.

The district court refused to issue a certificate of appealability, and Miranda applied for such a certificate in this Court.

## II. DISCUSSION

We have reviewed each of Miranda's claims in light of the grounds on which the Appellate Division affirmed his conviction and the grounds on which the State sought denial of his petition. For the reasons that follow, we deny Miranda's request for a certificate of appealability with respect to his claims of refusal to appoint new counsel, ineffective assistance of assigned counsel, and unduly severe sentencing. With respect to his claims of prosecutorial misconduct and denial of self-representation, we remand to the district court for identification of the ground or grounds on which those claims were denied, and we hold the application for a certificate of appealability in abeyance pending receipt of such clarification.

### A. *The Review Function of the Courts of Appeals*

As a general matter, the federal courts of appeals review decisions of the district courts. Different standards of review are to be applied, depending on whether the appellant's challenge focuses principally on issues of fact or issues of law. A district court's findings of fact are evaluated under the deferential "clearly erroneous" standard of review. *See* Fed.R.Civ.P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ."). This standard is applicable to a district court's findings in federal habeas cases. *See, e.g.,* Fed.R.Civ.P. 81(a)(2) ("These [Federal Rules of Civil Procedure] are applicable to proceedings for . . . habeas corpus . . . to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in civil actions."); *Wade v. Mayo,* 334 U.S. 672, 683–84, 68 S.Ct. 1270, 92 L.Ed. 1647 (1948) (findings by the district court in a habeas case are reviewed under the clearly-erroneous standard); *Quesinberry v. Taylor,* 162 F.3d 273, 276 (4th Cir.1998) (same).

■ Where an appeal turns on factual issues, findings of fact by the district court are normally needed in order to permit meaningful appellate review. Although we will proceed with review of a district court's decision even where it lacks findings "if we are able to discern enough solid facts from the record to permit us to render a decision," *Davis v. New York City Housing Authority,* 166 F.3d 432, 436 (2d Cir.1999), we, like other appellate courts, remand to the district court when the record is insufficiently clear to permit us to determine the basis for the district court's decision, *see, e.g., id.* at 437. In *Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), for example, the Supreme Court vacated the denial of habeas and remanded in order to permit the district court to "make explicit findings" on issues relating to the petitioner's representation by counsel. *Id.* at 727, 68 S.Ct. 316; *see also id.* at 730–31, 68 S.Ct. 316 (Frankfurter, J., concurring) (noting that the crucial facts could not be determined from the record itself and that fathoming what the district judge concluded "[f]rom what he wrote . . . would be the most tenuous guessing").

■ A district court's conclusions of law are reviewed *de novo,* rather than for clear error, but it is normally useful to have those conclusions articulated. "[I]f the District Court does not enter an opinion analyzing the relevant precedents in light of the record," or merely enters "skeletal conclusions of law," the reviewing court is "deprived of . . . helpful guidance." *United States v. Marine Bancorporation, Inc.,* 418 U.S. 602, 616 n. 13, 94 S.Ct. 2856, 41 L.Ed.2d 978 (1974). The *de novo* standard
 does not mean that it is our function to decide [legal issues] in the first instance.

We are dependent on the district court to identify and sort out the issues on . . . motions [for dismissals as a matter of law], to examine and analyze them, and to apply the law to the facts accepted by the court for purposes of the motion. We are entitled to the benefit of the district court's judgment, which is always helpful and usually persuasive.

*Beckford v. Portuondo,* 234 F.3d 128, 130 (2d Cir.2000) (per curiam). In *Beckford v. Portuondo,* for example, the district court's decision granting summary judgment dismissing the plaintiff's Eighth Amendment and due process claims "consisted of two sentences," as follows:

> "Upon review of the record and applicable law, the Court concludes that no genuine issue of material fact exists that precludes summary judgment, and that Plaintiff's claims are legally deficient. The Court notes that it does not reach the issue of Eleventh Amendment immunity or the applicability of *Kilcullen* at this stage, and relies on the alternate grounds articulated in Defendants' memorandum."

234 F.3d at 129 (quoting district court's decision). We concluded that the district court's explanation of its decision was "too spare to serve as a basis for our review." *Id.* at 130. We remanded to the district court "for further consideration and a complete and comprehensive decision," pointing out that

> [a] recitation of the applicable factors or legal standard, standing alone, is normally not sufficient to permit appropriate appellate review. . . . If the court fails to make findings and to give an explanation, and the reason for the court's ruling is not clear to us, we will remand for findings and an explanation.

*Id.* (internal quotation marks omitted).

Other Circuits have similarly sought clarification in the context of appeals from orders granting or denying petitions for habeas corpus. *See, e.g., Finley v. Drew,* 453 F.2d 1240, 1241 & n. 1 (3d Cir.1971) (per curiam) (remanding for findings of fact and conclusions of law where order granting habeas was too " 'cryptic[ ]' " to "apprise[ the court of appeals] of the reasons for the District Court's disposition"); *Tatem v. United States,* 275 F.2d 894, 896 (D.C.Cir.1960) ("It is . . . imperative that denial either of leave to file the petition, or . . . of the writ itself, be accompanied by an expression of the reasons for the denial either by informal memorandum, by recitals in an order, or by findings."); *Shinall v. Breazeale,* 404 F.2d 785, 787 (5th Cir. 1968) (remanding where failure to state findings or reasons for denial of habeas prevented appellate court from determining whether an evidentiary hearing should have been held); *Whitley v. Miller,* 749 F.2d 634, 635 (11th Cir.1984) (per curiam) (remanding for "further proceedings, findings of fact and conclusions of law" where the "findings of the district court [we]re insufficient to enable [the court of appeals] to reach the merits"); *Tucker v. Howard,* 177 F.2d 494, 496 (7th Cir.1949) ("the judge in a habeas corpus proceeding[ ] should make and file findings of fact and conclusions of law"). *See also Sumner v. Mata,* 449 U.S. 539, 552, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) ("No court reviewing the grant of an application for habeas corpus should be left to guess as to the habeas court's reasons for granting relief.").

Moreover, specification by the district court of its findings of fact and conclusions of law informs the losing litigant of the reason for that court's ruling and of the principal questions that he must address if he appeals. *See generally Mayo v. Lakeland Highlands Canning Co.,* 309 U.S. 310, 317, 60 S.Ct. 517, 84 L.Ed. 774 (1940) ("[I]f appellants conceived themselves aggrieved by the action of the court upon

motion for preliminary injunction, they were entitled to have explicit findings of fact upon which the conclusion of the court was based. Such findings are obviously necessary to the intelligent and orderly presentation and proper disposition of an appeal.").

We do not suggest that the district court must write an opinion or lengthy order in every case. When we are ruling on an application for a certificate of appealability, we must determine whether the habeas petitioner has made a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c); in some cases, a lack of substance is plain from the face of the application, and the necessary determination can be made even if the district court has denied the petition with the tersest of orders.

▮ Nor do we suggest that the court cannot properly adopt a party's argument on a given issue instead of issuing an order setting out a free-standing elaboration of the court's views. For example, in *Clanton v. United States*, 284 F.3d 420, 426 (2d Cir.2002), we found the district court's order denying a § 2255 claim sufficiently informative in part because it adopted specified pages of the government's response to the motion. We concluded that that specificity disclosed a disposition that could meaningfully be reviewed.

▮ That said, we nonetheless heed the cautionary note repeatedly sounded by the Supreme Court as to the imprudence of wholesale adoption of a party's position even in making findings of fact after the court's decision has been announced:

> "[District judges should] avoid as far as [they] possibly can simply signing what some lawyer puts under [their] nose[s]. These lawyers, and properly so, in their zeal and advocacy and their enthusiasm are going to state the case

for their side in these findings as strongly as they possibly can. When these findings get to the courts of appeals they won't be worth the paper they are written on as far as assisting the court of appeals in determining why the judge decided the case."

*United States v. El Paso Natural Gas Co.*, 376 U.S. 651, 657 n. 4, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964) (citation omitted). We view the "potential for overreaching and exaggeration on the part of attorneys," frequently exhibited when they are preparing findings of fact after learning that the judge has decided in their favor, *Anderson v. Bessemer City*, 470 U.S. 564, 572, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), as even greater where the case is in its initial stages and the court has simply ordered the respondent to show cause why a habeas petition should not be granted. The issues have not been circumscribed by the court's announcement of any ruling, and the attorneys are generally inclined to include every argument that has occurred to them as a possible reason for the court to rule in their client's favor, no matter how frail. In the present case, for example, the State's Memorandum, which was adopted in toto by the district court, stated that Miranda both did, and did not, object to the unfair line of cross-examination. And it offered as a ground for rejecting his self-representation claim the conjecture that, if granted that right, Miranda would thereafter have constructively waived it by misbehaving. The very nature of advocacy creates a need for the court to be wary of wholesale adoption of a party's proffers.

### B. AEDPA

The enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, introduced several new elements into the federal habeas framework. These include a new degree of deference that fed-

eral courts must accord certain state-court decisions, discussed below, as well as a provision that certain petitioners who have previously filed habeas petitions must secure permission before filing additional petitions, discussed in the opinion we file today in *Gandarilla v. Artuz*, 322 F.3d 182 (2d Cir.2003).

■ AEDPA requires that a federal habeas court accord a deferential level of review to a decision of the state court as to "any claim that was adjudicated [by the state court] on the merits." 28 U.S.C. § 2254(d). As to such a claim adjudicated on the merits, § 2254(d) provides that habeas shall not be granted unless the state-court decision either "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2), or "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1). By its terms, § 2254(d) requires such deference only with respect to a state-court "adjudication on the merits," not to a disposition "on a procedural, or other, ground." *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir.2001). *Accord Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir.2002) (en banc) (per curiam) (defining "adjudication on the merits" to be a substantive, rather than a procedural, decision); *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999) (an "adjudication on the merits" is a substantive, rather than a procedural, resolution of a federal claim).

■ Where it is "impossible to discern the Appellate Division's conclusion on [the relevant] issue," *Boyette v. Lefevre*, 246 F.3d 76, 91 (2d Cir.2001), a federal court should not give AEDPA deference to the state appellate court's ruling, *see id.* at 89. Generally, when the Appellate Division opinion states that a group of conten-

tions is either without merit "or" procedurally barred, the decision does not disclose which claim in the group has been rejected on which ground. If the record makes it clear, however, that a given claim had been properly preserved for appellate review, we will conclude that it fell into the "without merit" part of the disjunct even if it was not expressly discussed by the Appellate Division. *See, e.g., Ryan v. Miller*, 303 F.3d 231, 246 (2d Cir.2002).

### C. *The Present Case*

In the present case, the district court denied Miranda's petition (1) by adopting the reasons given by the Appellate Division, to which the district court accorded AEDPA deference by concluding that the state-court decision was neither contrary to nor an unreasonable application of Supreme Court precedents, and was not based on unreasonable factual findings, and (2) by adopting the reasons given by the State in opposing the petition. We conclude that AEDPA deference was due only with respect to Miranda's claims of refusal to replace his counsel, ineffective assistance of counsel, and severity in sentencing; that Miranda has not made a substantial showing of the denial of a constitutional right with respect to those claims; and that the district court's adoption of the decision of the Appellate Division and the arguments of the State with respect to the prosecutorial misconduct and self-representation claims leaves ambiguities that impede meaningful appellate review and a reasoned determination of whether those claims meet the requirements for issuance of a certificate of appealability.

### 1. *The Nonreplacement and Alleged Ineffectiveness of Counsel*

■ Miranda's claims that the trial court should have replaced his assigned

counsel with a new attorney and that assigned counsel rendered ineffective assistance were rejected by the Appellate Division on their merits. *See People v. Miranda,* 243 A.D.2d at 584–85, 665 N.Y.S.2d at 508 (request for new counsel was "properly denied" because Miranda "failed to demonstrate good cause for the substitution"; Miranda "received effective assistance of counsel"). Accordingly, the district court properly accorded AEDPA deference to the state-court's rejection of those claims. And we see no error in the district court's conclusion that the Appellate Division's rejection of those claims was not contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts. As to those claims, therefore, we conclude that Miranda has failed to make a substantial showing of the denial of a constitutional right, and we deny a certificate of appealability.

### 2. *The Severity of the Sentence*

■ We also deny a certificate of appealability with respect to the claim that Miranda was sentenced harshly pursuant to the New York Penal Law provisions applicable to persistent felony offenders. Miranda did not assert that his punishment was cruel and unusual, in violation of the Eighth Amendment; nor did he assert any other federal constitutional claim in connection with the imposition of that sentence. The certificate-of-appealability requirements are not met.

### 3. *The Self–Representation and Prosecutorial Misconduct Claims*

■ Miranda's claims that he was deprived of the right to represent himself at trial and was deprived of a fair trial by prosecutorial misconduct were not expressly mentioned in the Appellate Division's opinion affirming his conviction.

Presumably these claims were rejected in that court's catch-all sentence stating that Miranda's "remaining contentions are unpreserved for appellate review, without merit, or do not require reversal." *People v. Miranda,* 243 A.D.2d at 585, 665 N.Y.S.2d at 508. However, that disjunctive phrasing does not reveal whether a particular remaining claim was rejected on the ground that it was unpreserved or on the ground that it lacked merit, and the record does not make it clear that either claim was rejected for lack of merit. Because the state court may not have decided these two claims on their merits, no AEDPA deference by the district court was warranted. Further, because the Appellate Division's opinion posits alternative grounds, the district court's adoption of that opinion in its entirety leaves the district court's ruling ambiguous as to the grounds on which these two claims were rejected.

Although the district court also adopted the memorandum of law filed by the State in opposition to Miranda's petition, that memorandum likewise proffered alternative grounds for rejecting the claims of prosecutorial misconduct and denial of self-representation, and the wholesale adoption of the State's Memorandum leaves the district court's ground or grounds for rejecting these claims ambiguous. In addition, the State's positions on these claims present other difficulties.

As to the self-representation claim, the State's Memorandum raised factual issues that required resolution before its arguments could be accepted. Miranda's habeas petition asserted that he had asked the state trial court to allow him to represent himself at trial; his petition attached copies of pages from the brief submitted to the Appellate Division by his attorney, which stated that "defendant requested to represent himself." The State's Memoran-

dum to the district court, however, arguing the merits of this habeas claim, stated that "petitioner did not request to proceed *pro se* at any time ...." (State's Memorandum at 14.) Issue seems to have been squarely joined. However, the district court adopted the reasons proffered in the State's Memorandum without explanation. The court made no finding that there had been no such request by Miranda; nor did it make any statement that it relied on some other ground for dismissal that made findings on this question unnecessary.

In addition, the State argued that even if Miranda had made a timely request to represent himself at trial, his claim should be rejected because his anger and hostility would have led him to be unruly at trial and hence his right of self-representation would have been waived. Although it is difficult to believe that this highly conjectural contention was a ground on which the district court summarily rejected Miranda's self-representation claim, we must assume that it was since it was one of the reasons the State proffered for rejecting Miranda's petition, and the district court unqualifiedly adopted the State's Memorandum.

As to Miranda's claim that prosecutorial misconduct deprived him of a fair trial because he was subjected to unfair cross-examination and because the prosecutor manipulated evidence he elicited from a complaining witness, the State argued that the claim was procedurally barred, meritless, or involved only nonprejudicial error. Some of its arguments would have seemed unlikely candidates for adoption by the district court. For example, as to the cross-examination, the State's Memorandum argued, *inter alia*, that "[t]he Appellate Division held that [the prosecutorial misconduct] claim was unpreserved for review" (*id.* at 8). That court, however, had dealt with that claim only as one of the

"remaining claims" that the court stated were either "unpreserved for appellate review, without merit, *or* d[id] not require reversal," *People v. Miranda*, 243 A.D.2d at 585, 665 N.Y.S.2d at 508 (emphasis added). The State's representation of what the Appellate Division held is thus not supported by the Appellate Division's opinion.

The State's Memorandum also made seemingly contradictory factual representations. It argued that the cross-examination aspect of the fair trial claim was "procedurally defaulted" and thus "barred from review here" (State's Memorandum at 7) because Miranda did not object to the prosecutor's cross-examination at trial (*see id.* at 8). Yet the State also argued that, applying the cause-and-prejudice standard, Miranda could not show prejudice because the claim was meritless, the trial court having admonished the prosecutor "to conduct a professional examination" (*id.* at 10–11) "*[a]fter petitioner's counsel objected to this line of questioning*" (*id.* at 10 (emphasis added)). Thus, the State's Memorandum represented that Miranda both did, and did not, object to the unfair cross-examination.

 We hasten to note that if Miranda's challenge to the prosecutor's unprofessional cross-examination were the only basis for his fair trial claim, it would not warrant the granting of a certificate of appealability, for prosecutorial misconduct cannot give rise to a constitutional claim unless the prosecutor's acts constitute "egregious misconduct," *Donnelly v. DeChristoforo*, 416 U.S. 637, 647–48, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). However, in order to determine whether relief is warranted, prosecutorial misconduct must be assessed "in the context of the entire trial," *id.* at 639, 94 S.Ct. 1868, and Miranda makes the more serious claim that the prosecutor manipulated trial evidence.

At his robbery trial, Miranda contended that the wallet he was accused of stealing belonged to him; the State sought to prove that the wallet belonged to alleged robbery victim Sam Notghi. The trial record indicates that the police inventory of the items seized from Miranda had listed the wallet and currency found in it but had made no mention of any contents that would identify the wallet as belonging to Notghi; when the wallet was marked by the prosecution for identification as an exhibit at trial, there was no mention of any contents. Before the wallet was admitted in evidence, the prosecutor showed it to the three defense attorneys, who inspected it and found nothing inside. However, when Notghi was called as a witness and asked if he could identify the wallet as his, he did so by reaching into the wallet and pulling out, *inter alia*, a Social Security card belonging to him. Upon questioning by defense counsel outside the presence of the jury, Notghi said he had been told by the prosecutor that morning that he would find his Social Security card in the wallet when he testified. When the prosecutor was questioned by the court, he said he assumed that defense counsel had conducted a thorough inspection of the wallet; he said he found the card in an obscure recess of the wallet and had put it back into the wallet, though he could not say that he put it back into the obscure area. He did not mention the card to the defense. The trial judge criticized the prosecutor for his "lack of forthrightness" (Trial Transcript at 711), calling his failure to disclose to the defense the presence of documents inside the exhibit "absolutely outrageous" (*id.* at 713). The court excluded the card from evidence and admonished the jury to "strike ... from your minds all testimony regarding this item of Sam Notghi's personal identification, which was allegedly recovered from inside the brown and checkered leather wallet which is People's Number 2 in evidence." (*Id.* at 762).

The Supreme Court has long condemned "egregious [prosecutorial] misconduct" such as "manipulation of the evidence." *Donnelly v. DeChristoforo,* 416 U.S. at 647, 94 S.Ct. 1868; *see id.* at 646–48, 94 S.Ct. 1868 (discussing *Miller v. Pate,* 386 U.S. 1, 6–7, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967)) (prosecutor's knowing misrepresentation of the nature of proffered evidence), and *Brady v. Maryland,* 373 U.S. 83, 86, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (prosecutor's knowing withholding of evidence material to the defense). Although the merits of a fair trial claim will depend on the likely impact of the misconduct in light of the trial proceedings as a whole, *see, e.g., Donnelly v. DeChristoforo,* 416 U.S. at 647, 94 S.Ct. 1868, and Miranda's claim may ultimately be found to be nonmeritorious in light of the strength of the State's evidence and the curative measures taken by the trial court in the wake of the surprise presence of important documents inside of an exhibit, we lean toward concluding that, as to this claim, in light of the trial court's view of the prosecutor's conduct as "outrageous," Miranda has made a substantial showing of the denial of a constitutional right and is entitled to a certificate of appealability. However, since, as discussed above, we require clarification from the district court of the basis on which it denied Miranda's claim of violation of his right to represent himself at trial, we seek enlightenment as to the basis for the district court's denial of the prosecutorial misconduct claim as well.

## CONCLUSION

For the reasons stated above, we deny Miranda's application for a certificate of appealability with respect to his claims that he was improperly denied new counsel, that he received ineffective assistance

of counsel, and that his sentence was improper. We remand to the district court for identification of the ground or grounds on which the court denied the petition insofar as it asserted claims that Miranda was denied the right to represent himself at trial and that he was denied a fair trial because of prosecutorial misconduct. We hold in abeyance the application for a certificate of appealability with respect to the latter claims pending receipt of clarification from the district court.