David **BENJAMIN** (95–A–
6818), Petitioner,

v.

**Charles GREINER, Superintendent
of Green Haven Correctional
Facility, Respondent.**

No. 02–CV–0189.
No. 03–MISC–0066(JBW)

United States District Court,
E.D. New York.

Oct. 9, 2003.

David Benjamin, Stormville, NY, pro se.

## MEMORANDUM, JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

The petition for a writ of habeas corpus is denied. No hearing on this matter is necessary. This memorandum briefly addresses petitioner's claims.

## I. Facts and Procedural History

A homicide prosecution based upon a botched abortion is rare today. Nevertheless, there were adequate grounds to charge petitioner with murder in the second degree, manslaughter in the second degree, criminally negligent homicide, and tampering with physical evidence in connection with an abortion that led to the death of a pregnant woman.

The evidence supported the following statement of facts: Petitioner operated a private medical clinic. Petitioner performed a second-trimester abortion on the victim in his clinic. At the time of the procedure, petitioner was appealing a recommendation by a committee of the Department of Health that his medical license be revoked. Shortly after the victim's death, petitioner's medical license was revoked due to several unrelated instances of misconduct in performing surgical procedures.

In the spring of 1993, the victim scheduled an abortion procedure. Based on the information she provided, she was between nineteen and twenty weeks pregnant. The clinic's receptionist made a written record of this information. The clinic was deficient. There were no other trained medical personnel, no equipment to monitor the patient's vital signs and no established emergency procedures.

The abortion procedure lasted between one hour and fifteen minutes and two hours. Although the victim was connected to an IV, petitioner failed to establish other monitoring devices. There are greater risks involved in performing an abortion on a woman who is between nineteen and twenty weeks pregnant than in one in the first trimester; heightened safety measures are required. Petitioner did not adjust his procedure to account for the increased risk. He caused a three-inch laceration, extending from the victim's vagina through her cervix, which perforated her uterus. The perforation of the uterus caused massive bleeding.

Petitioner had the victim wheeled into the recovery room while he performed another abortion even though she complained of feeling ill. Following such an abortion procedure, appropriate medical practice dictates that the patient be monitored by trained medical personnel every five minutes for at least an hour. Petitioner ignored her for at least an hour. During that time, the victim bled to death on the examining room table.

After approximately an hour and ten minutes, petitioner reexamined the victim. She was cold. The receptionist called 911. In a panicked attempt to revive the victim, petitioner inserted a air tube into her esophagus, rather than her trachea. When the paramedics arrived, petitioner falsely informed them that the abortion was performed without complications. When the victim was lifted off the examining table to be transported to the hospital, about a liter of her blood remained on the table.

Petitioner was convicted of second degree murder. He was sentenced to a term of twenty-five years to life in prison.

In November of 1996 and January of 1997, he moved pro se to vacate his conviction in the Supreme Court. The Supreme Court denied the motion. Permission to appeal was denied.

On direct appeal, the Appellate Division unanimously affirmed the conviction. *People v. Benjamin*, 270 A.D.2d 428, 705 N.Y.S.2d 386 (2d Dept.2000). His application for leave to appeal to the New York State Court of Appeals was denied. *People v. Benjamin*, 95 N.Y.2d 832, 713 N.Y.S.2d 138, 735 N.E.2d 418 (2000).

The Appellate Division also denied his coram nobis petition.

In his application for a writ of habeas corpus, petitioner claims that (1) he was denied the effective assistance of trial counsel, (2) the trial court erred in failing to play the entire tape of a 911 call, (3) the trial court improperly admitted into evidence three photographs of the victim's injuries, (4) the trial transcript was improperly changed, and (5) the trial court failed to order an interpreter for a testifying witness.

## II. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

■ An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that

reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J.; concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S.Ct. 1495. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted).

■ "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir.2002); *see also Yung v. Walker*, 341 F.3d 104 (2d Cir.2003) (amended opinion) (district court's habeas decision that relied on precedent from the court of appeals is remanded for reconsideration in light of "the more general teachings" of Supreme Court decisions). The Court of Appeals for the Second Circuit has also indicated that habeas relief may

be granted if a state court's decision was contrary to or an unreasonable application of "a reasonable extension" of Supreme Court jurisprudence. *Torres v. Berbary,* 340 F.3d 63, 72 (2d Cir.2003). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III. Exhaustion

In the past, a state prisoner's federal habeas petition had to be dismissed if the prisoner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "This exhaustion requirement is ... grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982) (en banc).

Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3);

*see also Ramos v. Keane,* No. 98 CIV. 1604, 2000 WL 12142, \*3, 2000 U.S. Dist. LEXIS 101, at \*10 (S.D.N.Y.2000) (state's failure to raise exhaustion requirement does not waive the issue).

### IV. Procedural Bar

■ A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546.

■ If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

■ When a state court "says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved." *Glenn v. Bartlett,* 98 F.3d 721, 724–25 (2d Cir.1996). When a state court "uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama v. Comm'r of Corr. Svcs.,* 235 F.3d 804, 810 (2d Cir. 2000). Where "a state court's ruling does not make clear whether a claim was rejected for procedural or substantive reasons

and where the record does not otherwise preclude the possibility that the claim was denied on procedural grounds, AEDPA deference is not given, because we cannot say that the state court's decision was on the merits." *Su v. Filion,* 335 F.3d 119, 126, n. 3 (2d Cir.2003) (citing *Miranda v. Bennett,* 322 F.3d 171, 178 (2d Cir.2003)). This congeries of holdings leaves it an open question whether there are "situations in which, because of uncertainty as to what the state courts have held, no procedural bar exists and yet no AEDPA deference is required." *Id.*

## V. Certificate of Appealability

 A certificate of appealability may be granted with respect to any one of petitioner's claims only if petitioner can make a substantial showing of the denial of a constitutional right. **Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit.** *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). The court has taken into account the rule of section 2253(c)(3) of Title 28 of the United States Code that a certificate of appealability "shall indicate which specific issue or issues satisfy the [substantial showing of the denial of a constitutional right] required by paragraph (2)." *See also Shabazz v. Artuz,* 336 F.3d 154, 159 (2d Cir. 2003).

This opinion complies with *Miranda v. Bennett,* 322 F.3d 171, 175–77 (2d Cir. 2003), and Rule 52 of the Federal Rules of Civil Procedure. No other issue open to consideration by this court has merit. *See Sumner v. Mata,* 449 U.S. 539, 548, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) ("a court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit").

## VI. Analysis of Claims

### A.

 Petitioner claims he was denied the effective assistance of counsel. He raised this claim on direct appeal. The claim was denied by the Appellate Division. The claim is exhausted. The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (emphasis added). The Supreme Court has explained that in giving meaning to this requirement courts must be guided by its purpose—"to ensure a fair trial"—and that therefore the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a Sixth Amendment claim, a petitioner must prove both that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," *id.* at 688, 104 S.Ct. 2052, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. *See also Wiggins v. Smith,* 539 U.S. ——, 123 S.Ct. 2527, 2530–31, 156 L.Ed.2d 471 (2003); *United States v. Eyman,* 313 F.3d 741, 743 (2d Cir.2002). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

 The performance and prejudice prongs of *Strickland* may be ad-

dressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697, 104 S.Ct. 2052. In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the "cumulative weight of error" in order to determine whether the prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane,* 239 F.3d 191, 202 (2d Cir.2001). The court must also keep in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052. "The result of a [criminal] proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Purdy v. Zeldes,* 337 F.3d 253, 260 (2d Cir.2003) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). Ineffective assistance may be demonstrated where counsel performs competently in some respects but not in others. *See Eze v. Senkowski,* 321 F.3d 110, 112 (2d Cir.2003).

As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052. Counsel, in other words, "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691, 104 S.Ct. 2052. Where counsel fails to make a reasonable investigation that is reasonably necessary to the defense, a court must conclude that the decision not to call an expert cannot

have been based on strategic considerations and will thus be subject to review under *Strickland's* prejudice prong. *See Pavel v. Hollins,* 261 F.3d 210, 223 (2d Cir.2001) (counsel ineffective in a child sexual abuse case where his failure to call a medical expert was based on an insufficient investigation); *Lindstadt,* 239 F.3d at 201 (same). The court of appeals for the Second Circuit has recently gone so far as to imply that all of counsel's significant trial decisions must be justified by a sound strategy—a significant raising of the bar that would appear to require an unrealistic degree of perfection in counsel. *See Eze,* 321 F.3d at 136 (remanding to district court for factual hearing because it was "unable to assess with confidence whether strategic considerations accounted for ... counsel's decisions").

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

Each factual claim made in support of an allegation of ineffective assistance of counsel must be fairly presented to a state court before a federal habeas court may rule upon it. *See Rodriguez v. Hoke,* 928 F.2d 534, 538 (2d Cir.1991) (dismissing petition as unexhausted where petitioner's claim of ineffective assistance of counsel alleged more deficiencies before the habeas court than were presented to the state court, because "[t]he state courts should have been given the opportunity to consider all the circumstances and the cumulative effect of all the claims as a whole" (quotation omitted)). Where an additional factual claim in support of the ineffective-assistance allegation merely "supplements" the ineffectiveness claim and does not "fundamentally alter" it, dismissal is not required. *Caballero v. Keane,* 42 F.3d 738, 741 (2d Cir.1994). Each significant

factual claim in support of an ineffective-assistance allegation premised on appellate counsel's deficient performance must be exhausted. *See Word v. Lord,* No. 00 CIV. 5510, 2002 WL 32145769, **11–12, 2002 U.S. Dist. LEXIS 19923, at *34–*35 (S.D.N.Y. Mar. 18, 2002) (Magistrate's Report and Recommendation).

 Petitioner makes several unsupported allegations. He claims that defense counsel and prosecution maintained an agreement not to object to the other's case during trial. He claims that trial counsel unwisely recommended that he take the stand in his own defense. He also accuses trial counsel of conspiring with the State and the court to deny him a fair trial. Petitioner makes several wild accusations without detailing any prejudice he may have suffered as a result of the alleged misconduct. At no time during the trial did he suggest his dissatisfaction with trial counsel. The trial record indicates multiple instances in which the attorneys offered objections to testimony. *E.g., Trial Proceedings* at 2235, 2248 & 2250. His claim of a conspiracy between the attorneys is baseless. He also does not offer any credible evidence of a conspiracy between the court and the attorneys. Given the overwhelming evidence against him, there is no reasonable probability that the verdict would have been different if not for trial counsel's alleged errors. The record reflects that trial counsel mounted a vigorous defense.

Trial counsel's decision to recommend that he testify was a strategic decision. Petitioner was aware of his right to refuse trial counsel's recommendation. Acquiescing to the strategic advice of trial counsel does not allow petitioner to now claim that he was acting on bad advice. Trial counsel made a determination based upon his opinion of the trial's progress. Reasonable strategic decisions should not be second guessed. *See Strickland,* 466 U.S. at 690–

91, 104 S.Ct. 2052. The Appellate Division examined the petitioner's claim and found it to be without merit. Petitioner has not offered new evidence to upset the Appellate Division's ruling. The claim is meritless.

### B.

 Petitioner claims that he was denied the right to present a defense when the court failed to play the entire contents of a taped recording of one of the three 911 calls. This claim was raised on direct appeal. The claim is exhausted. A criminal defendant has a right to present a defense and to present his "version of the facts." *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). "This right is a fundamental element of due process of law." *Id.; see also* U.S. Const. amend VI. The right to present a defense—to present evidence—is "dependent entirely on the defendant's initiative." *Taylor v. Illinois,* 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). The right to present a defense must be invoked by the defendant. The decision as to whether to present certain evidence must "be preceded by deliberate planning and affirmative conduct." *Id.* Although the court is under no obligation to present the defendant's case for him, the court cannot deny him his due process rights.

 Petitioner's trial counsel sought to play only a portion of the 911 call for the jury. The court did not determine which portions of the 911 call were played. The court allowed the contents of the tape to be played over the State's objection. *Trial Proceedings* at 2212–25. Petitioner's claim that the court disallowed contents of the tape is without merit. Petitioner would not have been exonerated had the jury heard the full contents of the tape. Prior to counsel playing a portion of the tape for the jury, the witness testified to everything she said during the 911 call. *Id.* at

2248. The witness was certain that she remembered the call. The jury was made aware of the full contents of the tape through the witness's testimony. Petitioner's counsel stated that the tape was intended only to establish the timing and stress level of the event. *Id.* at 2213.

■ Whether the exclusion of evidence violates a defendant's right to present a defense depends upon whether " 'the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.' " *Justice v. Hoke,* 90 F.3d 43, 47 (2d Cir.1996) (quoting *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). Petitioner's evidence was not excluded by the court. The portion of the tape to be played was selected by trial counsel. The record does not indicate that he registered a protest to anything less than the full tape recording being played. In any event, the omitted evidence does not create a reasonable doubt that did not otherwise exist. Testimony as to the contents of the tape was on the record. Petitioner was not denied due process. The claim is meritless.

### C.

■ Petitioner claims that the court improperly admitted into evidence photographs of the victim's injuries. The photographs depicted wounds inflicted on the victim's uterus, tears in the abdominal surface of the uterus, the size of the blood vessel from which she hemorrhaged, and blood vessels at the top of the laceration. Petitioner claims that the photographs were intended to excite the jury and arouse emotions. Generally, evidentiary issues do not present federal questions or implicate the Federal Constitution. *E.g., Rosario v. Kuhlman,* 839 F.2d 918, 924 (2d Cir.1988) ("[E]rroneous evidentiary hearings do not automatically rise to the level of constitutional error."). The admissibility of photographs of homicide victims is a matter of New York law. Homicide victims' corpses are generally admissible when they tend to prove or disprove some material fact in issue, even if the photographs portray a gruesome spectacle. *People v. Pobliner,* 32 N.Y.2d 356, 369–70, 345 N.Y.S.2d 482, 493, 298 N.E.2d 637 (1973). Federal habeas corpus relief does not lie for mere errors of state law. *Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Errors of state law that rise to the level of a constitutional violation may be corrected by a habeas court, but even an error of constitutional dimensions will merit habeas corpus relief only if it had a " 'substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quotation omitted).

The record indicates that the photographs were relevant because they depicted how the victim bled and the amount of blood loss the victim suffered. The record also indicates that the photographs were instrumental in demonstrating that petitioner must have seen the victim's massive bleeding. Petitioner's counsel was allowed to conduct a preliminary examination to test the competency of the expert witness and evidence. The trial court weighed the probative value of the photographs versus their prejudicial nature. The Appellate Division affirmed the trial court's decision. The photographs were an illustrative accompaniment to the expert witness's testimony. Aside from the photographs, evidence against petitioner was substantial. There is no evidence that the photographs substantially and injuriously affected the jury's verdict. *See Brecht,* 507 U.S. at 637–38, 113 S.Ct. 1710. Granting of the writ is not warranted in these circumstances.

### D.

■ Petitioner claims that the state violated his due process rights by providing

an impermissibly altered trial transcript. "[O]nce a State offers to criminal defendants the opportunity to appeal their cases, it must provide a trial transcript to an indigent defendant if the transcript is necessary to a decision on the merits of the appeal." *Ake v. Oklahoma*, 470 U.S. 68, 76, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). The right to a trial transcript would be meaningless if it did not include the "right to a reasonably accurate transcript." *Curro v. Watson*, 884 F.Supp. 708, 719 (E.D.N.Y.1995). On direct appeal, the Appellate Division rejected this claim as meritless.

█ The Appellate Division did not contravene the constitutional principles of the right to a trial transcript. Petitioner offers nothing more than bald statements that the transcript contained false statements. The alleged inaccuracies in the transcript did not deny him the opportunity to seek a direct appeal. His appellate counsel voiced no complaints when filing his appeal. Neither counsel nor petitioner moved to amend the trial transcripts. There is no proof that the trial transcript's alleged inaccuracies denied him access to the courts. Petitioner has not suffered a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Granting of the writ is not warranted in these circumstances.

### E.

█ Petitioner claims that the trial court violated his due process rights by refusing to order an interpreter for a defense witness. The Appellate Division denied the claim as without merit. The due process clause "prohibits trying the criminal defendant ... who [is] hampered by [his] inability to communicate in the English language." *United States v. Mosqu-*

*era*, 816 F.Supp. 168, 173 (E.D.N.Y.1993). A criminal defendant also has a constitutional right to present a defense. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). If a witness is incapable of communicating in English, the right to have his witnesses' testimony translated into an intelligible language is part of his right to present a defense. The court's decision to forego an interpreter did not impair petitioner's right to present a defense.

█ When the witness initially took the stand, the court asked her if she felt "comfortable testifying in English." *Trial Proceedings* at 2146. The witness responded in the affirmative. *Id.* The witness testified in English for a full day of direct examination. On the second day of her testimony, before the State was to begin its cross examination, the witness asked for a translator. *Id.* at 2227. The court found that the witness was capable of testifying in English. Her request was deemed a tactic to disrupt the flow of the State's cross examination. Petitioner has offered no new evidence to suggest that the witness's request for a translator was valid. The witness spoke in English for the duration of her testimony without any additional requests. Petitioner was not denied the right to present a defense. The claim is without merit.

### VII. Conclusion

The petition for a writ of habeas corpus is denied.

No certificate of appealability is granted with respect to any of petitioner's claims, petitioner having made no substantial showing of the denial of a constitutional right.

SO ORDERED.