**Miguel MIRANDA, Petitioner,**

v.

**Floyd BENNET, Superintendent, Elmira Haven Correctional Facility, Respondent.**

**Civil Action No. CV–99–0437(DGT).**

United States District Court, E.D. New York.

June 15, 2004.

---

Miguel Miranda, Comstock, NY, Pro Se.

Valerie Singleton, New York, NY, for Respondent.

*Memorandum and Order*

TRAGER, District Judge.

On January 20, 1999, *pro se* petitioner Miguel Miranda ("Miranda" or "petitioner") filed a petition pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. The petition was dismissed by this court on July 27, 1999 for the reasons set out in the decision of the Appellate Division and the State's Memorandum of Law dated March 8, 1999, submitted in opposition to the petition.[1] This court refused to issue a certificate of appealability. Petitioner applied to the Second Circuit for a certificate of appealability to permit review of this court's judgment. On February 26, 2003, the Second Circuit remanded to this court for a clarification of the ground or grounds on which the petitioner's claims of prosecutorial misconduct and denial of self-representation were rejected; as to all other claims raised by petitioner, the Second Circuit denied a certificate of appealability. Because the court of appeals has directed this court to clarify the grounds for its denial of the petition with respect to two of petitioner's claims, this memorandum and order is issued.

*Discussion*

**(1)**

**Prosecutorial Misconduct Claim**

Petitioner claims that prosecutorial misconduct deprived him of a fair trial because he was subjected to unfair cross-examination and because the prosecutor

---

1. For a more detailed review of the state court proceedings and the history of the present petition, see *Miranda v. Bennett,* 322 F.3d 171, 173–75 (2d Cir.2003).

manipulated evidence he elicited from a complaining witness. With regard to petitioner's claim of unfair cross-examination, the Court of Appeals noted that "if Miranda's challenge to the prosecutor's unprofessional cross-examination were the only basis for his fair trial claim, it would not warrant the granting of a certificate of appealability." *Miranda*, 322 F.3d at 180. The Court of Appeals further explained that "prosecutorial misconduct cannot give rise to a constitutional claim unless the prosecutor's acts constitute 'egregious misconduct.' However, in order to determine whether relief is warranted, prosecutorial misconduct must be assessed 'in the context of the entire trial,' and Miranda makes the more serious claim that the prosecutor manipulated trial evidence." Assuming, *arguendo,* that the prosecutor's cross-examination was "unprofessional" the court will consider the manipulation of evidence claim to determine whether the prosecutor's acts constitute "egregious misconduct" amounting to a constitutional claim.

At trial, petitioner claimed he was the owner of the wallet that he was accused of stealing. The State, on the other hand, sought to prove that the wallet belonged to alleged robbery victim Sam Notghi. The trial record indicates that the police inventory of the items seized from petitioner listed the wallet and currency found in it but made no mention of any identifying contents contained in the wallet. (Trial Tr. at 693–94). When the wallet was marked by the prosecution for identification as a trial exhibit, there was no mention of any identifying contents. (*Id.* at 395). Before the wallet was admitted in evidence, the prosecutor showed it to the three defense attorneys, who inspected it and had no objection to the wallet being in evidence. (*Id.* at 396). When the victim Sam Notghi was testifying as a witness and was asked if he could identify the wallet as his, he did so by reaching into the wallet and pulling out a Social Security card belonging to him. (*Id.* at 679–80). Later, when questioned by defense counsel outside the presence of the jury, Notghi said he had been told by the prosecutor that morning that he would find his Social Security card in the wallet when he testified. (*Id.* at 691). Upon being questioned by the court, the prosecutor said he assumed that defense counsel had conducted a thorough inspection of the wallet. (*Id.* at 708–09). The prosecutor said he found the card in an obscure recess of the wallet and had put it back into the wallet, but he did not mention the social security card to the defense. (*Id.* at 708–12). The trial judge criticized the prosecutor for his "lack of forthrightness" (*Id.* at 711), calling his failure to disclose to the defense the presence of documents inside the exhibit "absolutely outrageous" (*id.* at 713). The court excluded the card from evidence and admonished the jury to "strike ... from your minds all testimony regarding this item of Sam Notghi's personal identification, which was allegedly recovered from inside the brown and checkered leather wallet which is People's Number 2 in evidence." (*Id.* at 762).

The prosecutor's attempt to introduce Sam Notghi's Social Security card into evidence, while perhaps reflecting the prosecutor's poor judgment in not mentioning it to defense counsel, was proper and reasonable and did not constitute "egregious misconduct." The prosecutor's use of the Social Security card was proper, as petitioner had been made aware of the existence of the wallet, and had been given several opportunities to examine it. Additionally, if introduction of the Social Security card had been improper, petitioner was not prejudiced because the court did not allow admission of the Social Security card in evidence, and the court gave the jury

strong curative instructions regarding the card. Even when the prosecutor's failure to disclose the identifying information in the wallet is considered in the context of the entire trial, including what might have been an "unprofessional" cross-examination, the prosecutor's acts do not amount to "egregious conduct." Moreover, the Court of Appeals has stated that the allegedly "unprofessional" cross examination itself does not amount to "egregious conduct." Therefore, the prosecutor's acts, including "unprofessional" cross-examination and failure to disclose the identifying contents of the wallet, do not give rise to a constitutional claim.

### (2)

### Denial of Self–Representation Claim

■ In remanding to this court for identification of the grounds based on which the court denied the petition insofar as it asserted a claim of denial of the right to self-representation, the Court of Appeals stated as follows:

> As to the self-representation claim, the State's Memorandum raised factual issues that required resolution before its arguments could be accepted. Miranda's habeas petition asserted that he had asked the state trial court to allow him to represent himself at trial; his petition attached copies of pages from the brief submitted to the Appellate Division by his attorney, which stated that "defendant requested to represent himself." The State's Memorandum to the district court, however, arguing the merits of this habeas claim, stated that "petitioner did not request to proceed pro se at any time...." (State's Memorandum at 14.) Issue seems to have been squarely joined. However, the district court adopted the reasons proffered in the State's Memorandum without explanation. The court made no finding that there had been no such request by Mi-

randa; nor did it make any statement that it relied on some other ground for dismissal that made findings on this question unnecessary.

*Miranda,* 322 F.3d at 179–80.

A review of the trial record leaves no doubt that petitioner did not request to proceed pro se. Petitioner's statement that he requested to represent himself refers to a statement by his lawyer to the court that "after conferring with Mr. Miranda, he has advised me that he wishes to represent himself and does not want me to represent him." (Tr. 651). However, when the court followed up by asking the defendant if he wanted to represent himself, defendant stated that he wanted a new attorney:

> THE COURT: Mr. Miranda, I want to put some questions to you, sir. I want you to know that we are in the middle of the People's case. They have already presented 3 witnesses. They are going to present additional witnesses.
>
> If I understand your application, you wish to continue the trial and represent yourself; is that correct?
>
> THE DEFENDANT MIRANDA: I need an attorney to represent me.
>
> THE COURT: You don't want to represent yourself, you need another attorney? This is what I need to know, Mr. Miranda.
>
> THE DEFENDANT MIRANDA: Can you let me speak, please?
>
> THE COURT: Sure.
>
> THE DEFENDANT MIRANDA: Say what you got to say and I want to be able to make my point across.
>
> THE COURT: Thank you, Mr. Miranda. Let me say this to you: I don't understand the nature of your application, so I am going to put a question to

you and then I think you can answer the question yes or no.

. . . . .

[T]he question I want to ask you is, are you asking me to appoint another attorney for you or are you asking me to allow you to represent yourself and be your own lawyer? Which of the two? Is it the first, do you want me to appoint a different attorney for you or do you want to represent yourself and be your own attorney?

THE DEFENDANT MIRANDA: I asked you to appoint another attorney for me before the trial started, before the trial began. I told you that the attorney that I had is not doing anything....

. . . . .

THE COURT: ... I most respectfully, Mr. Miranda, deny your application to change lawyers at this stage of the proceeding and I direct that Mr. Schwed continue to represent you....

(Tr. 651–58).

The record very clearly reveals that after petitioner's attorney indicated that petitioner wanted to represent himself, the judge asked the petitioner three separate times whether he in fact wanted to represent himself. After the first time the judge asked this question, the petitioner said "I need an attorney to represent me." When the court asked the question again to clarify petitioner's intention, petitioner still did not indicate that he wanted to represent himself. Therefore, there can be no doubt that petitioner did not request to proceed pro se despite several opportunities to do so, but wanted new counsel, to which he was not entitled. Accordingly, petitioner's claim that he was deprived of the right to represent himself at trial must fail.

## Conclusion

For the aforementioned reasons clarifying the grounds for this court's previous denial of the petition for a writ of habeas corpus, the motion for a writ of habeas corpus is denied. The Clerk of the Court is directed to close the case.